UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Patterson Companies, Inc., | Case No. 21-cv-744 |
| Plaintiff, | |
| v. | **COMPLAINT FOR DECLARATORY JUDGMENT** |
| XL Specialty Insurance Company, | |
| Defendant. | |

Plaintiff Patterson Companies, Inc. ("Patterson"), by and through its undersigned attorneys, for its Complaint against XL Specialty Insurance Company ("XL"), alleges as follows:

### NATURE OF THE ACTION

1. This is an insurance coverage dispute under an excess directors and officers ("D&O") liability insurance policy that XL sold to Patterson (the "2017-18 Policy").

2. XL has disclaimed coverage to Patterson for a securities class action against Patterson and its former CEO, Scott Anderson, in the United States District Court for the District of Minnesota, *Plymouth County Retirement System v. Patterson Companies, Inc., et al.*, No. 0:18-cv-00871-MJD-HB (the "*Plymouth* Action").

3. Patterson seeks a declaration of certain rights, duties, and obligations of the parties under the 2017-18 Policy, pursuant to 28 U.S.C. § 2201. Because XL has disclaimed coverage for the *Plymouth* Action under the 2017-2018 Policy, actual controversies exist between the parties that are ripe and of sufficient

immediacy to justify the issuance of a declaratory judgment setting forth the parties' respective rights and obligations.

## THE PARTIES

4. Plaintiff Patterson is a Minnesota corporation with its principal place of business in Minnesota. At all relevant times, Patterson has been in the business of distributing dental and animal health supplies, equipment, and value-added services to its customers. Patterson is also the named insured under the 2017-2018 Policy.

5. Upon information and belief, Defendant XL is a Delaware corporation with its principal place of business in Connecticut. At all relevant times, XL has been in the business of selling insurance policies, including D&O policies, to businesses throughout the United States, including in Minnesota.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because this is an action between a citizen of Minnesota and a citizen of Delaware and Connecticut, and the amount in controversy exceeds $75,000.

7. This Court has personal jurisdiction over XL because XL was, at all relevant times, systematically engaged in the business of selling insurance policies that cover policyholders located or conducting business in this district, including Patterson. Further, under Minn. Stat. § 543.19 XL has (a) consented in writing to acceptance of personal service of process by the Minnesota Commissioner of

Commerce as required by Minn. Stat. §§ 45.028 and 60A.19; and (b) consented to acceptance of personal service of process by its appointment of a registered agent for service of process in Minnesota.

8. Venue in this district is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events, acts, or omissions giving rise to Patterson's claims occurred in this district.

## FACTUAL BACKGROUND

### *The 2017-18 Policy*

9. XL issued the 2017-18 Policy to Patterson, policy number ELU149766-17, for the Policy Period May 1, 2017 to May 1, 2018. The 2017-18 Policy is attached hereto as Exhibit A ("Ex. A"). This was the third consecutive year in which XL insured Patterson as its excess D&O liability insurer.

10. The 2017-18 Policy applies in excess of Underlying Insurance,[1] which is comprised of a primary policy issued by National Union Fire Insurance Company of Pittsburgh, PA (the "National Union 2017-18 Primary Policy") for the period May 1, 2017 to May 1, 2018 and a first excess policy issued by Travelers Casualty and Surety Company of America for the same period (the "Travelers 2017-18 Excess Policy"). The full terms and conditions of the 2017-18 Policy, including its limit of liability, are set forth in Ex. A.

---

[1] Unless otherwise defined, capitalized terms have the meaning given to them in the 2017-18 Policy.

11. As relevant here, the 2017-18 Policy follows form to and incorporates the terms and conditions of the National Union 2017-18 Primary Policy. More specifically, the 2017-18 Policy's Insuring Agreement provides in relevant part: "Coverage hereunder will apply in conformance with the terms, conditions, endorsements and warranties of both the Primary Policy . . . and of any other Underlying Excess Policy . . . . To the extent that any terms, conditions, and endorsements of the Policy may be inconsistent with any terms, conditions, and endorsements of the Underlying Insurance, the terms, conditions and endorsements of this Policy shall govern." *See* Ex. A at Excess Policy Declarations and Excess Policy Coverage Form. The Travelers 2017-18 Excess Policy also incorporates by reference the insuring clauses, warranties, definitions, terms, conditions, exclusions, and other provisions contained in the National Union 2017-18 Primary Policy. The National Union 2017-18 Primary Policy is attached hereto as Exhibit B ("Ex. B").

12. The National Union 2017-18 Primary Policy's Insuring Agreement provides, in relevant part, that the policy's coverage applies to Claims first made against an Insured during the Policy Period. *See* Ex. B at 1.

13. Pursuant to Insuring Agreement B of the National Union 2017-18 Primary Policy, XL agreed to pay, among other things, the "Loss of an Organization that arises from any . . . Claim . . . made against any Insured Person . . . for any Wrongful Act of such Insured Person[.]" *See id.*

4

14. Pursuant to Insuring Agreement C of the National Union 2017-18 Primary Policy, XL agreed to pay, among other things, the "Loss of any Organization . . . arising from any Securities Claim made against such Organization for any Wrongful Act of such Organization[.]" *See id.*

15. The National Union 2017-18 Primary Policy covers "Insureds," which includes any "Insured Person" and "Organization." "Insured Person" is defined as including any "Executive of an Organization," which in turn is defined as including any "past, present and future duly elected or appointed director [or] officer." "Organization" is defined to include the "Named Entity," which is Patterson. *See id.* at pages 1 and 17-26.

16. "Loss" is defined in relevant part as including "damages, settlements, judgments (including pre/post-judgment interest on a covered judgment)" and "Defense Costs." *See id.* at pages 21-22.

17. "Claim" is defined in relevant part as including "a written demand for monetary, non-monetary or injunctive relief" and includes "any Securities Claim[.]" *See id.* at page 17.

18. "Securities Claim" is defined in relevant part as including a Claim made against any Insured "alleging a violation of any federal, state, local or foreign regulation, rule or statute regulating securities (including but not limited to the purchase or sale or offer or solicitation of an offer to purchase or sell securities) which is: (i) brought by any person or entity alleging, arising out of, based upon or

5

attributable to the purchase or sale or offer or solicitation of an offer to purchase or sell any securities of an Organization; or (ii) brought by a security holder of an Organization with respect to such security holder's interest in securities of such Organization[.]" *See id.* at page 25.

19. "Wrongful Act" is defined in relevant part as including "any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act[.]" With respect to an Organization, the actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act must be "solely in regard to a Securities Claim." *See id.* at page 25.

### *The 2015 Warranty Letter*

20. In or about May 2015, as part of its underwriting process for the first excess D&O policy XL sold to Patterson, for the 2015-16 policy year, XL required that Patterson's then-CEO execute an Excess Limits Warranty and Representation Letter (the "2015 Warranty Letter"). A copy of the 2015 Warranty Letter is attached hereto as Exhibit C ("Ex. C"). The text of the 2015 Warranty Letter was drafted to the requirements of XL, and was prepared only for the 2015-16 policy period. As is common with such letters, it served the limited purpose of facilitating Patterson's procurement of additional excess limits for the policy year in which Patterson first sought such limits, by making excess carriers such as XL comfortable with the risk at the outset.

21. The 2015 Warranty Letter provided, in relevant part, that "[s]olely with respect to the proposed limits of liability[,]" with respect to certain specified types of matters not disclosed thereunder, "[i]t is understood and agreed that if any claim, suit, action, investigation, knowledge or information [of any act, error or omission which may reasonably be expected to give rise to a claim] exists, then (i) such claim, suit, action, investigation, knowledge and information; and (ii) any future claim, suit, action and investigation arising therefrom, is excluded from coverage under the proposed limit of liability[.]" *See* Ex. C.

22. When the 2015-16 policy expired, XL renewed the policy for the 2016-17 policy year, without requesting an extension of the 2015 Warranty Letter, without requesting an additional warranty, and without proposing an exclusion barring coverage for any matters that were purportedly subject to the 2015 Warranty Letter.

23. When the 2016-17 policy expired, XL again renewed, issuing the 2017-18 Policy without requesting an extension of the 2015 Warranty Letter, without requesting an additional warranty, and without proposing an exclusion barring coverage for any matters that were purportedly subject to the 2015 Warranty Letter.

24. As early as December 2015 and at other times thereafter prior to its issuance of the 2017-2018 Policy, XL was repeatedly informed of antitrust matters involving Patterson—including in Patterson's filings with the U.S. Securities and Exchange Commission, which were included within Patterson's application for XL's

policy in both Spring 2016 and Spring 2017 for the May 1 renewals each year. *See* Ex. B at p. 17. XL never asserted that any of these matters were subject to the 2015 Warranty Letter or any policy exclusion relating to the 2015 Warranty Letter . . . until Patterson sought coverage for the *Plymouth* Action (and even then, only a year and a half after receiving notice of the *Plymouth* Action).

### *The Plymouth Action*

25. On or about March 28, 2018, Patterson shareholders brought the *Plymouth* Action.

26. On or about January 18, 2019, all defendants to the *Plymouth* Action filed a motion to dismiss the action in its entirety. ECF No. 89.[2]

27. On or about July 25, 2019, the Honorable Steven E. Rau ("Judge Rau") issued a report and recommendation granting in part and denying in part the defendants' motion to dismiss. ("R&R"). ECF No. 112. A copy of the R&R is attached hereto as Exhibit D ("Ex. D"). On or about September 10, 2019, the Honorable Michael J. Davis ("Judge Davis") issued his order adopting Judge Rau's R&R. ECF No. 115. A copy of Judge Davis' order is attached hereto as Exhibit E ("Ex. E").

28. Judge Rau's R&R limited the *Plymouth* Action to allegedly wrongful actions of Patterson's former CEO, Scott Anderson, and against Patterson for Mr. Anderson's allegedly wrongful actions. Those alleged wrongful actions are

---

[2] "ECF No. __" refers to the docket number of the cited filing in the *Plymouth* Action.

8

comprised of affirmative alleged misrepresentations, actionable under Section 10(b) of the Exchange Act, Rule 10b-5(b), and Section 20(a) of the Exchange Act, as to Patterson's course of dealing with group purchasing organizations ("GPOs"), which, following disclosure regarding a U.S. Federal Trade Commission ("FTC") proceeding alleging misconduct as to GPOs, allegedly resulted in decreases in the price of Patterson stock. Patterson and Mr. Anderson contest these allegations and are vigorously defending the *Plymouth* Action.

29. On or about September 28, 2020, the Court granted the *Plymouth* plaintiffs' Motion to Certify Class, Appoint Class Representative and Appoint Class Counsel. On or about October 12, 2020, Defendants filed a petition for interlocutory review of the class certification order with the Eighth Circuit Court of Appeals, which was denied on or about November 12, 2020. The case is thus proceeding.

### ***The Coverage Dispute***

30. Patterson timely notified XL of the Plymouth Action by letter dated March 30, 2018.

31. Patterson has kept XL and its other carriers fully apprised of the developments in the case and has met all conditions and requirements for coverage under the 2017-18 Policy.

32. By letter dated April 24, 2018, XL responded to Patterson's March 30, 2018 notice of the *Plymouth* Action. XL's letter merely set forth the 2017-18 Policy's limit of liability and attachment point, requested copies of underlying

9

insurers' coverage positions, requested that XL be copied on future correspondence and kept apprised of further developments, and stated that XL "reserved all rights." XL's letter did not cite the 2015 Warranty Letter or any exclusion as a potential basis for denying coverage for the *Plymouth* Action, nor did it raise any other substantive coverage defense. XL only did so, for the first time, nearly a year and a half later.

33. After Judge Davis' September 10, 2019 order adopting the R&R, XL issued a letter on or about September 19, 2019 stating that coverage was precluded, principally on the ground that the 2015 Warranty Letter bars coverage for the *Plymouth* Action under the 2017-2018 Policy—*i.e.*, a policy issued *two years* after the policy to which the 2015 Warranty Letter applied. After Patterson objected to the applicability of the 2015 Warranty Letter by letter on or about October 15, 2019, XL supplemented its newly-minted position in a second letter on or about October 30, 2019.

34. XL's stated position is that the 2015 Warranty Letter was incorporated into the 2017-18 Policy as part of the "Application" for that policy. XL asserts that several items—a July 2014 Civil Investigative Demand ("CID") from the Texas Attorney General,[3] August 6, 2014 and May 7, 2015 CIDs from the Arizona Attorney General, and an April 9, 2015 Texas Attorney General petition and judgment in a proceeding against *Benco Dental,* to which Patterson was not a party—were not

---

[3] The Texas CID was issued on or about July 18, 2014, although XL's October 30, 2019 coverage letter characterizes it a "a July 7, 2014 Civil Investigative Demand from the Texas Attorney General."

disclosed in the 2015 Warranty Letter, and that the *Plymouth* Action "arises" from those matters and is therefore excluded from coverage under the 2017-18 Policy based on the 2015 Warranty Letter.

35. XL's position is incorrect for numerous reasons, as Patterson explained to XL in additional letters dated November 5, 2019 and August 13, 2020, as well as during multiple telephone conversations during the summer of 2020.

36. First, the 2015 Warranty Letter and the exclusionary language therein does not apply to the 2017-18 Policy, *i.e.*, a policy issued two years later. The 2015 Warranty Letter applies only to the policy year for which it was issued, the 2015-16 policy period. This is the case because, among other reasons:

   a. The 2017-2018 Policy does not contain any language incorporating the 2015 Warranty Letter's exclusionary provision into the policy.

   b. Neither the 2015 Warranty Letter itself, nor any other agreement between the parties, indicates that the 2015 Warranty Letter applies to anything other than the underwriting of the 2015-16 XL policy and Claims arising in that policy period, consistent with the fact that 2015-16 was the first policy year in which Patterson sought additional excess limits from XL. Indeed, the 2015 Warranty Letter states that it applies "*[s]olely* with respect to *the proposed* limits of liability"—a clear reference to the underwriting of the 2015-16 policy, for which XL required the 2015 Warranty Letter. *See* Ex. C (emphasis added).

11

    c. XL renewed the policy twice (in 2016 and 2017) without requesting an extension of the stale 2015 Warranty Letter, an additional warranty, or an exclusion barring coverage for any matters that were purportedly subject to the 2015 Warranty Letter. XL did this despite being repeatedly informed of antitrust matters involving Patterson, beginning at least as early as December 2015, when Patterson described such matters in filings with the U.S. Securities and Exchange Commission, all of which were included within Patterson's application for XL's policy in 2016 and 2017. *See* Ex. B at p. 17. XL never notified Patterson or otherwise indicated that it considered the coverage in subsequent policy years to be limited by the stale warranty letter.

37. Second, even assuming that the parties had acted differently, and agreed that the 2015 Warranty Letter *did* apply to the 2017-18 Policy, it still would not operate to bar coverage for the *Plymouth* Action. Among other reasons:

    a. The *Plymouth* Action is a securities fraud case, and its allegations do not "arise from" any matters that could or should have been disclosed under the 2015 Warranty Letter.

    b. If the 2015 Warranty Letter was, in fact, incorporated into the 2017-18 Policy as part of its Application, as XL asserts, the 2015 Warranty Letter would still not operate as a coverage exclusion. The 2017-18 Policy narrowly limits XL's remedy with respect to warranties in the

12

Application to seeking rescission, and then *only if* the warranties "materially affected either the acceptance of the risk or the hazard assumed by the Insurer under the policy[.]"  *See* Ex. B at page 17, Endorsement Nos. 39 and 40. This cannot have been the case here, where: (i) Patterson's SEC filings disclosing antitrust matters were also part its Application for the 2017-18 Policy and the previous years' policies; (ii) in any event, the *Plymouth* Action did not arise from any other matters that could or should have been disclosed in the 2015 Warranty Letter; and (iii) there was no intent to deceive or defraud XL.

38. Third, again, assuming that the 2015 Warranty Letter *does* somehow apply to the 2017-18 Policy, XL has waived the right to assert any coverage defense based on the 2015 Warranty Letter because it waited nearly a year and a half after receiving notice of the *Plymouth* Action to assert any such defense. XL is also estopped from asserting such defense because it twice renewed the policy, in exchange for lucrative premiums, without ever informing Patterson that the 2015 Warranty Letter would limit coverage under policies subsequent to the 2015-16 policy (the year for which the letter was issued)—in spite of XL's receipt of information regarding antitrust matters involving Patterson at least as early as December 2015, which XL now asserts implicate the 2015 Warranty Letter.

39. Patterson disputed XL's position in writing on multiple occasions, including by letter on or about October 15, 2019, November 5, 2019 and August 13,

2020.  In August 2020, Patterson explored potential settlement of the *Plymouth* Action in a mediation with the plaintiffs (its second such attempt), and sought XL's consent and participation in that effort.  XL again asserted the 2015 Warranty Letter as a basis for disclaiming coverage for the *Plymouth* Action under the 2017-18 Policy.  XL's position leaves Patterson in a position of uncertainty as to the availability of coverage for the *Plymouth* Action.  Patterson and XL participated in mediation on January 19, 2021, but were unable to resolve their dispute.

## CAUSE OF ACTION
## (DECLARATORY JUDGMENT)

40. Patterson repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

41. As set forth above, XL disclaimed coverage for the *Plymouth* Action on the basis of the 2015 Warranty Letter.

42. The 2015 Warranty Letter, however, does not apply to the 2017-18 Policy.  The 2015 Warranty Letter applies only to the policy year for which it was issued, the 2015-16 policy period.

43. Even if the 2015 Warranty Letter does apply to the 2017-18 Policy, it still would not bar coverage for the *Plymouth* Action, because the *Plymouth* Action does not "arise from" any matters that could or should have been disclosed under the 2015 Warranty Letter.

44. By reason of the foregoing, an actual and justiciable controversy exists between Patterson and XL.

45. Pursuant to 28 U.S.C. § 2201, Patterson seeks a judgment declaring that the 2015 Warranty Letter does not apply to the 2017-2018 Policy. In the event that the Court determines that the 2015 Warranty Letter does apply to the 2017-18 Policy, Patterson seeks a declaration that the 2015 Warranty Letter does not operate to bar coverage for the *Plymouth* Action under the 2017-18 Policy.

## PRAYER FOR RELIEF

**WHEREFORE**, Patterson respectfully demands judgment against XL as set forth below:

1. A declaration by this Court in favor of Patterson and against XL that, pursuant to the terms of the 2017-18 Policy and under applicable law, the 2015 Warranty Letter does not apply to the 2017-18 Policy, or, in the event that the Court determines that the 2015 Warranty Letter applies to the 2017-18 Policy, that the 2015 Warranty Letter does not bar coverage for the *Plymouth* Action under the 2017-18 Policy.

2. Such other relief as the Court may deem just and proper.

Date:  March 20, 2021.                s/Robert J Gilbertson
                                                        Matthew D. Forsgren  (# 246694)
                                                        Robert J. Gilbertson  (# 22361X)
                                                        FORSGREN FISHER MCCALMONT DEMAREA TYSVER LLP
                                                        225 South 6th Street, Suite 1750
                                                        Minneapolis, MN  55402
                                                        (612) 474-3300
                                                        mforsgren@forsgrenfisher.com
                                                        bgilbertson@forsgrenfisher.com

Peter M. Gillon
Benjamin D. Tievsky
(*pro hac vice* motions forthcoming)
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 17th Street, NW
Washington, DC  20036
(202) 663-8000
peter.gillon@pillsburylaw.com
benjamin.tievsky@pillsburylaw.com

*Attorneys for Plaintiff*
*Patterson Companies, Inc.*